**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **DOCKET NO.:  0311 1:21CR00078-001 (MN)** |
| | ) | |
| **MELVIN JANVIER III** | ) | |

**DEFENSE SENTENCING MEMORANDUM**

I.     **Introduction**

MELVIN JANVIER is due to be sentenced on January 23, 2025.  Mr. Janvier grew up in

a family home with intact parents and a brother.  His father, Melvin Leroy Janvier, Jr.,

worked as a welder until he was injured in 2014.  His mother, Lisa Janvier, continues to work in

a dental office management company. Mr. Janvier also has a younger brother, Kyle, who works

as a welder as their father did.

Melvin is not a complainer.  He relates memories of his childhood as if they were typical

of any youth growing up in any other household.  He downplays the sexual abuse he suffered as

a child between the ages of three and five by his grandfather possibly due to shame or possibly

because many others in the family had also been abused by this grandfather thus diluting the

impact it had in his mind because it was spread out over an extended family.  This grandfather

made unspeakable acts normalized over a family unit.

Melvin was always close to his mother but had difficulty with a father that struggled with

alcohol and was emotionally abusive to him during his youth.  Although this relationship has

been repaired and Melvin's relationship with his brother has improved as they age, the impact on

his mind as a youth cannot be forgotten.

Melvin is intelligent and has always been able to make connections with people. He has

always had friends and has had long-term girlfriends. This is not always so for someone diagnosed with autism. This condition was not diagnosed until he was almost thirty years old and was incarcerated. He was diagnosed much earlier with ADHD and PTSD. He suffers from and is treated for anxiety. None of this is surprising to anyone who learns of Melvin's sexual abuse by a family member, less than positive treatment by his father, and witness to his parents at-times fiery marriage.

Melvin complies with all recommendations and requirements for therapy. He will comply and welcomes any treatment or therapy available to him.

The following sentencing memorandum is respectfully submitted to this Court in order to assist the Court in imposing an appropriate sentence in this matter.

## II.    Sentencing Considerations

As affirmed in Rita v. United States, 551 U.S. 338 (2007) and by the Third Circuit in United States v. Ricks, 494 F.3d 394 (3d Cir. 2007), explained below, this Court exercises broad discretion in fashioning a sentence which furthers the directives and purposes of sentencing under 18 U.S.C. §3553(a).

Mr. Janvier asks this Court to take into account his late Asperger's diagnosis, his remorse and willingness to participate in any suggested therapy and his desire to change for the better when deciding upon an appropriate sentence and respectfully requests the Court to exercise its discretion and impose a sentence of less than the recommended guideline range, of 120 months – 135 months incarceration when determining his sentence.

**III.** **Post-Booker Sentencing Considerations**

**_Rita v. United States_ and the District Court's Discretion to Impose Sentence Tailored to Relevant Section 3553(a) Factors, Regardless of Whether the Sentence Varies from the Sentence Calculated under the Guidelines.**

**a.** As revised by United States v. Booker, 543 U.S. 220, 245-46 (2005), the Sentencing Reform Act requires a sentencing court to consider [advisory] Guidelines ranges, see 18 U.S.C. §3553(a)(4), but it permits the court to tailor the sentence in light of other statutory concerns as well, see §3553(a)." This means that a district court's primary obligation is to choose a sentence in light of all the statutory sentencing factors (including the advisory guideline range) in the context of defendant's particular case, and that sentence may or may not be imposed with regard to the guideline range. See United States v. Coleman, 451 F.3d 154, 158 (3d Cir. 2006) ("the Guidelines' recommended range may be modified or disregarded by a district court upon consideration of the other sentencing factors Congress has identified in §3553(a)").

**b.** The Supreme Court unconditionally affirmed this sentencing discretion in Rita. The Court held that while a guideline sentence, at appellate level only, "may" be presumed reasonable, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Id. at *9. Thus, even in those Circuits that have, unlike the Third Circuit, adopted a presumption of reasonableness, this does not apply in the district courts and is not binding at the appellate level.

**c.** Of course, the Third Circuit has flatly rejected any presumption of reasonableness. United States v. Cooper, 437 F.3d 324 (3d Cir. 2006). The appellate presumption upheld in Rita in no way changed the standard of appellate review recognized in the Third Circuit in Cooper, 437 F.3d at 330-31. Cooper rejected a presumption of reasonableness and instead simply acknowledged that a within-guideline sentence is "more likely" to be considered reasonable on

appeal than a non-guideline sentence.  Rita cited Cooper with approval. Rita at *8. Rita,
moreover, reaffirmed the abuse of discretion standard of review.  Id. at *9 ("appellate
'reasonableness' review merely asks whether the trial court abused its discretion). The
presumption for within-guidelines sentences upheld in Rita merely recognizes that where both
the Sentencing Commission and the sentencing judge have independently applied the §3553(a)
factors, and "the judge's discretionary decision accords with the Commission's view of the
appropriate application" in that particular case, "it is probable that the sentence is reasonable."
Rita at *8. Further, the Court was clear that "permitting courts of appeals to adopt a presumption
of unreasonableness does not mean that courts may adopt a presumption of unreasonableness" to
a non-guidelines sentence. Rita at *11.

Rita emphasized the sentencing court's discretion, moreover, by making plain that the
district court need not defer to the judgments of the Sentencing Commission, and that the
sentencing court must consider arguments "that the Guidelines reflect an unsound judgment…"
Id at *12. Rather than sentencing judges to defer in any way to the Sentencing Commission, "the
sentencing statutes envision *both* the sentencing judge and the Commission as carrying out the
same basic §3553(a) objectives, the one at retail, the other at wholesale." Id. at *7. In other
words, the two are equal and the Commission is no more an "expert" at evaluating the §3553(a)
factors than is the judge.

Thus, after properly determining the Guidelines range,[1] a sentencing judge may decide

---

[1] In the Third Circuit, district courts "follow a three-step sentencing process:"
     (1)      Courts must continue to calculate a defendant's Guidelines sentence precisely as
            they would have before Booker….
     (2)      In doing so, they must formally rule on the motions of both parties and state on
            the record whether they are granting a departure and how that departure affects

that the Guidelines sentence is not appropriate.  He or she may decide:

> That the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless.  See Rule 32(f). Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure.

Id. at *9.

A district court commits error if, in crafting an appropriate sentence, it believes that it is bound by any aspect of the sentencing guidelines. This aspect of post-Booker Third Circuit law was illustrated clearly in Gunter, 462 F.3d at 247-48 (remaining where district court's refusal to consider 100-to-1 crack versus powder differential as advisory amounted to treating the guidelines as mandatory)[2] and United States v. Cooper, 437 F.3d 324, 330-31 (3d Cir. 2006) (rejection notion that guideline sentence is presumptively correct as "com[ing] close to restoring the mandatory nature of the guidelines"). The view of the Guidelines as truly "advisory" has now been affirmed in Rita.

The Court further emphasized the ultimate command of the statute-- that sentence must be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set out in the statute, the so-called "parsimony provision." Id. at *6, *11 (noting that both the judge and the Commission both determine whether a Guidelines sentence reflects the Section 3553 factors, including the "parsimony provision"); United States v. Gunter, 462 F.3d 243 n.9 (3d Cir. 2006) (recognizing broad mandate of the "parsimony provision").

---

the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force….

(3)     Finally, they are required to exercise their discretion by considering the relevant §3553(a) factors…in setting the sentence they impose <u>regardless whether it varies from the sentence calculated under the Guidelines</u>.

[2] Gunter, 462F.3d at 247 (internal quotations and citations omitted; emphasis added).

Accordingly, post-Booker, district courts have much greater discretion in sentencing than was previously afforded. The Third Circuit and now the Supreme Court have spoken firmly in support of this discretion. This Court must exercise its sentencing discretion to further the directives and purposes of 18 U.S.C. §3553, the most salient of which are set forth and applied to Mr. Janvier's case herein.

## IV. Application of the Statutory Sentencing Factors to the Facts of this Case

### A. The Nature and Circumstances of the Offense and the History and characteristics of MELVIN JANVIER (18 U.S.C. §3553(a)(1))

#### (1) History and Characteristics of MELVIN JANVIER

MELVIN JANVIER, III, age 37, was born in Christiana, Delaware, on May 17, 1987. He was born to parents, mother, Lisa Michell Janvier, and father, Melvin Leroy Janvier, Jr. His father, Melvin Leroy Janvier, Jr., worked as a welder until he was injured in 2014. Mr. Janvier, Jr. has been on disability for the past ten years after being injured on the job. Mr. Janvier, Jr. (Melvin's father), was seriously injured when he was a welder, leaving him with disabilities to his hands and arms. He has had to have numerous surgeries to the hand and arms since this work accident.

Mrs. Janvier has consistently been employed as an accounts administrator for a dental office management firm. Mrs. Janvier has been in good health most of Melvin's life. Even though she has a heart condition that she manages and has to make frequent visits to her mother who is in hospice care in Millsboro, Delaware, Melvin's mother and father visit him monthly and continue to support him emotionally. Melvin speaks to his parents on the phone every night.

Melvin's younger brother, Kyle, age 32, lives in Hartly, Delaware and works as a welder as their father did. Melvin has a very close relationship with his mother and always has. He did

not always have a positive relationship with his younger brother, but now that they are both adults they have a much better relationship.

When describing his childhood, Melvin gives the impression of a household tasked with everyday living. He says that his parents were able to create an environment where the family did not have to worry about housing or having enough to eat and they were also able to give the kids things they wanted above their needs. Melvin does not describe a hectic or hostile environment but does remember an incident when he was a young teen, between his parents due to his father's infidelity, that was physical. Although Melvin doesn't categorize this incident as such, being that he related the story shows it had a traumatic imprint on his memory of his parents relationship and living with them. He also remembers his father as being hard on the kids but says this was because he only wanted the best for them. Melvin says, but does not emphasize, his father was emotionally abusive to the family resulting from his alcoholism. He has said that he has a good relationship with his father at this time.

Melvin was sexually assaulted by his maternal grandfather as a young child, between the ages of three through five. It was a terrible situation as could be expected. At the time Melvin felt helpless and had terrible nightmares due to the situation. It has only come to light during therapy when he was 27 years old leaving Melvin victimized again. He has said it was extremely traumatic discussing this, even with his therapist. He subsequently learned that his mother was also sexually abused by her father when she was a child. This grandfather sexually abused other children in the family

Melvin had been diagnosed with autism around 2015, while in his late twenties during a prior incarceration. Melvin's mother refers to this diagnosis made by Dr. Mensch as Aspergers, (a form of Autism). There is no report of Melvin being diagnosed with Autism prior to when he

discussed it while in group therapy post-incarceration. Melvin and his mother reported during the defense psychological evaluation that he had been diagnosed with ADHD in the second grade. He did take medication and received therapy at that time. The first medication caused negative side effects but it was changed and Melvin continued to take that medication until he was an adult. Melvin reported during the presentence evaluation that the medication made him depressed and suicidal. (The defense psychological evaluation has been sent to the Court and the government under separate cover)

Mrs. Janvier also reported during the defense psychological evaluation that Melvin had a concussion at three years of age and was clumsy as a child. She noted he was delayed socially compared to other children his age, leaving him with few friends.

In the recent past, Melvin was diagnosed with Generalized Anxiety Disorder and he has been prescribed and is taking Buspar, 20 milligrams, twice per day for his anxiety. He also has a diagnosis of Major Depressive Disorder and in addition to taking medications prescribed for the condition, he is involved in counseling. Melvin was actively participating in group therapy due to his conviction at the state level.

Melvin has been designated as "Care II Mental Health Category" because of a mild (but present) suicide risk. He self-reported a plan to harm himself and that he had an attempt of suicide in 2008.

While incarcerated Mr. Janvier attended and completed a number of personal improvement programs that included: Dialectical Behavior Therapy: Mindfulness Group, May 2022; Distress Tolerance Group, July 2022; Interpersonal Effectiveness Group, October 2022; Dialectical Behavior Therapy: Emotion Regulation, January 2023; Basic Cognitive Skills Group, May 2023; Anger Management Group, July 2023; Criminal Thinking Group, October 2023; and

Suicide Prevention Training, November 2023.  All of these programs helped Mr. Janvier to use his time wisely as opposed to having too much time for negative thinking as well as learning positive and different ways to channel his thoughts.

Mr. Janvier has said that he only drank about one alcoholic beverage per month.  He first tried alcohol at age 16 and had tried marijuana when he was 20.  He has no prior history of drug abuse and said that he was addicted to Percocet for one week and felt withdrawal symptoms when stopping after that week.

Mr. Janvier reports very few medical issues. He has been diagnosed with sleep apnea and uses a CPAP machine for that condition.  Although he has never been diagnosed, he thinks he has a heart condition like his mother does.  He was stabbed by a high school girl friend on his left hand where a scar remains.  He is working on an exercise plan that defense counsel recommended to improve his weight and overall health while incarcerated.

Mr. Janvier attended Ducastel Technical High School in Wilmington, Delaware and graduated in 2005.  Mr. Janvier remembers being in Advanced Placement Classes and records show he was in advanced placement math classes as well as taking health and medical assistant classes all four year while attending Delcastle Technical High School.  He did have an individualized education plan when he in the lower grades due to his ADHD.  He was put on medication for the ADHD.  Eventually either the medication or maturity made it no longer necessary for the additional help.

Mr. Janvier has said he looked at pornography while on a school computer that resulted in a three-day school suspension.  The school records show one suspension due to "use of technology."

Mr. Janvier went on to attend Delaware Technical Community College, starting in the

nursing program and transferring to computer programming. He was enrolled from May 2005 through December 2011, earning 39 credits, with a GPA of 2.10. During that time Mr. Janvier attended Dawn Career Institute's nursing assistant program and did get a license for Certified Nursing Assistant. He had that license for seven years.

Mr. Janvier has had significant relationships with women since high school. His high school relationship lasted for four years. His next relationship was with a woman, Erin, and that lasted about five years. Most recently he was living in a house across the street from his parents' home with three housemates, one of whom was Joanna Weller, his ex-fiancé. They met in an online anime group and interacted mostly online until Joanna moved from Michigan to Delaware to be with Melvin. Ms. Weller did not work as she had a spinal condition. She returned home to Michigan shortly after Melvin's arrest.

Melvin continued to be in a friendly relationship with Katherine Horstine, age 21, from Michigan and known to Melvin through Joanna. Due to the age difference Melvin has said they were just close friends.

It is unfortunate that Mr. Janvier's convictions will continue to alter his employment throughout his life. His last employment was working for Layaou Landscaping in Newark, Delaware, if only for four months. He was earning a good salary of $600 per week but had to inform his employer that due to his probation conditions, he could not work within proximity to schools and daycare centers. As the employer was unable or unwilling to make accommodations, Mr. Janvier had to leave the job.

Prior to that, Mr. Janvier worked at Purdue Farms in Milford, Delaware from August 2020 through May 15, 2021, earning $14.25 per hour in the weight, price and label department. Mr. Janvier reported earning $13 per hour in the shipping department through April 2021.

Before working at Perdue, Mr. Janvier worked at Elanco, Inc. a sheet metal shop in Bear, Delaware, on a part-time basis. He earned $13 per hour and worked there from January 2019 through August 2020 when he started at Perdue.

Mr. Janvier worked at Boscov's Department Store in Newark, Delaware in a "seasonal" position beginning in October 2018.

Mr. Janvier worked as a janitor at William Penn High School from 2010 through June 2015, earning $28,000 per year until his arrest for dealing and possession of child pornography.

Prior to his job as a janitor, he worked part-time for Burlington Coat Factory. Starting in 2007, Mr. Janvier worked as a home care nursing assistant for Bayada for three years, earning $9 per hour.

**B.** **The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

**(1)** **To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Just Punishment for the Offense**

If it was known why some people become involved in pornography on the internet, a solution could be implemented. Some people with untreated attention deficit disorder find themselves involved in illegal as well as other types of negative activities. According to various sources, those with this condition are known to have poor impulse control and often make bad decisions. In addition, those with Asperger's have trouble with interpersonal relationships and often find it easier to interact with people over the internet.

Mr. Janvier will have the time while incarcerated to develop coping strategies, understand the need for a treatment plan that might include medication and to act on his desire to learn the skills to work in computer repair so he will be prepared for employment and the community when released from incarceration. Mr. Janvier has struggled through his early adult life thus far

and does want to change his lifestyle and be part of society.

Mr. Janvier is an intelligent young man with great opportunity to give to his community and enhance society.  Mr. Janvier has accepted responsibility for his actions and he has acknowledged his wrongdoing by admitting the facts of the case in the guilty plea.  He is truly sorry for what he has done.  It is important for Mr. Janvier to be involved in life outside of prison so he can be involved with positive role models that live in the community as law-abiding citizens and pay his debt to society.  (A copy of Mr. Janvier's allocution statement has been sent to the Court and the government under separate cover.)[3]

### **(2) <u>To Afford Adequate Deterrence to Criminal Conduct of the Defendant</u>.**

There is no evidence that suggests that the length of the sentence correlates to strengthening the deterrence to commit crime.  At the same time though, it is wholly unfair to take the position that the only just punishment is imprisonment so as to act as a deterrence to other child pornographers. It has been recommended that he complete sexual offenders programming while incarcerated and be referred to a community-based sex offender treatment program when released.

While incarcerated, he can learn to deal with his anxiety and emotions to give him a solid base to re-enter the community.  As previously stated he is actively involved in all parts of the mental health treatment advised for him.  He is now involved in an exercise program to improve his physical as well as his mental health.

### **(3) <u>To Protect the Public from Further Crimes of the Defendant</u>.**

Mr. Janvier is prepared to pay his debt to society.  He is fully ready to participate in sex

---

[3] Defense counsel asked Mr. Janvier to prepare an allocution statement . Defense counsel has not edited any of the answers

offender therapy.  He has and will participate in group therapy but is self-aware enough to understand that if given a choice he would prefer individual therapy as opposed to group.  He would participate in group therapy but acknowledges that he sometimes is held back from fully contributing due to his anxiety. While incarcerated he can learn to deal with his anxiety and depression and also learn useful, employable skills.

### (4) To Provide Defendant with Needed Educational/Vocational Training or Corrective Treatment in the most Effective Manner.

While he is incarcerated, he must be at a facility that can offer him psychological therapy as well as maintain his medicine regiment.   He needs psychological counseling to deal with his anxiety, depression and learn coping skills to manage his Asperger's diagnosis.  Mr. Janvier is regretful of his actions.  He has no history of violence and is not a risk of safety to the community.   Mr. Janvier is prepared to pay his debt to society.

## V    The Nature and Circumstances of the Offense (18 U.S.C. §3553(a)(1))

### A.  The Offense Conduct

Offense Conduct for Indictment 1:21CR00078-001:

In July of 2021, a member of the Federal Bureau of Investigation's Child Exploitation Task Force entered a private group on KIK (an instant messaging app) known to be a place where images and videos of underage children were talked about and/or traded.  The agent began communicating with defendant, ultimately receiving an image and videos of child pornography via text message.  Through a Google account, investigators were able to associate the account with defendant.  On July 20, 2021, during a search of the residence, defendant acknowledged that had a smartphone, thus violating the terms of his probation.

On December 7, 2021, a Grand Jury in the District of Delaware returned a two-count

13

Indictment.  Count One charged Melvin Janvier with distribution of child pornography, in violation of 18 U.S.C. §§ 2252(A)(a)(2)(A) and (b)(1) and 2256.  Count Two charged Melvin Janvier with possession of child pornography, in violation of 18 U.S.C. §§ 2252(A)(5)(B) and (b)(2).

On January 6, 2022, the Government filed a motion to detain defendant which he did not contest.

Indictment 1:21CR00078-001:

Count Two (2):          Possession of child pornography, in violation of 18 U.S.C. §§ 2252(A)(5)(B) and (b)(2).

On November 20, 2023, and pursuant to a written plea agreement, Mr. Janvier appeared before U.S. District Court Judge Maryellen Noreika, and entered a plea of guilty to Count Two of the Indictment.

**B.  The Need for the Sentence to Promote Statutory Objectives - §3553(a)**

A sentence must be "sufficient, but not greater than necessary," to comply with the purposes listed in section 3553(a)(2), namely, the need to:  reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant.

Without a doubt the instant offense is a very serious one.  Mr. Janvier knows the Court will consider the magnitude of the offense, but he is hopeful that the Court will also consider the effect a lengthy incarceration will have upon him.  The Court possesses a breadth of experience with people successfully rehabilitated who go on to get the help they need and live productive lives and give to society through meaningful, law-abiding employment.

**C.  Kinds of Sentences Available and the Advisory Guideline Range**

**(§3553(a) (3)&(4))**

**(1) Statutory Provisions**

Petitioner has pled guilty to Count Two of the Indictment; possession of child pornography.

A term of imprisonment for the offense of Count Two is a minimum of ten (10) years incarceration.  The Court must impose a term of supervised release for the offense of Count Two of at least five (5) years.

**(2) Guidelines Provisions**

While the sentencing range set forth under the guidelines is no longer mandatory, that range and the policy statements set forth in the guidelines are factors to be considered in determining the appropriate sentence.  The presentence report correctly calculates the Total Offense Level in this case at 30 and a Criminal History Category of III.

The guideline range for imprisonment for Count Two is 120 to 135 months incarceration; pursuant to USSG § 5G1.1(c)(2).

The guideline range for supervised release for Count Two is five (5) years, the guideline requirement for a term of supervised release is five years to life; pursuant to U.S.S.G. § 5D1.2(b)(2).

Petitioner is not eligible for probation; pursuant to U.S.S.G. § 5B1.1(b)(2).

The guideline fine range for is from $30,000 to $250,000; pursuant to U.S.S.G. § §5E1.2(c)(3).

The court shall order restitution in this case; pursuant to U.S.S.G. § 5B1.1.

A special assessment of $100 is mandatory, pursuant to 18 U.S. §3013. The Court shall impose an additional special assessment of $5,000, pursuant to 18 U.S. §3014.

Mr. Janvier has agreed to forfeit, but is not limited to, a Samsung Galaxy.

As noted above, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Rita. at *9. It is respectfully submitted that the other §3553 sentencing factors, which take into account the circumstances of this offense diminish the suitability of the Guidelines in this case to adequately reflect the purposes and goals of sentencing.

He acknowledged personal responsibility for his offending behavior, no longer engages in that behavior, improved his understanding of how sexual abuse and assault negatively impacts victims, and made progress towards achieving healthy social supports.

Today images of child pornography are available for free in the privacy of one's home, with no planning and minimal effort. As a result, less dangerous people commit this offense than was previously the case, even though the guideline range is much higher than it was previously.

It is respectfully requested that this Honorable Court impose a sentence where Mr. Janvier is not incarcerated extendedly but a term of incarceration combined with community service and assistance in re-integration into the community.

Given the opportunity he could overcome the detrimental effects of his mental health / Asperger's disorder. He can learn new habits and positive ways to be involved with the community that he has not experienced thus far in his life. Mr. Janvier is young enough to change his way of life and give back to the community.

### OBJECTIONS TO THE PRESENTENCE REPORT

Defense counsel has objected to paragraphs 14 and 15, p. 6,7, and 8 in the presentence report. The Federal Bureau of Prisons and Federal Bureau of Investigations determined that Mr. Janvier was ultimately not found in possession of or was able to access CSAM materials via the

method described.  Defense counsel respectfully requests that the entirety of the pretrial

adjustment sections 14 and 15 be removed from the PSR,

Defense counsel has no further objections to the presentence report after reviewing them

again with the government.

## <u>Request for Non Guideline sentence  (Variance)</u>

1.      **Mental health issues** [4]

As stated above, Mr. Janvier had a difficult childhood growing up. He suffered sexual

abuse as a child.  He suffers from autism which was not diagnosed until he was incarcerated.  He

had earlier been diagnosed with ADHD and PTSD.  He had less than positive treatment by his

father and had to witness problems with his parents' marriage  He has been diagnosed as having

a general anxiety disorder as well as a major depressive disorder.  He is on the mental health unit

at the FDC due to a mild but present suicide risk.

2. **Post arrest rehabilitation**

Since his arrest, Mr. Janvier has made substantial efforts to rehabilitate herself.  He has

been in counseling at the FDC.  He is working hard to rehabilitate himself.  He is on the mental

health unit at the FDC and has provided assistance to other inmates on his floor and is well liked

by the officers on his floor as he always follows directions and is willing to lend a hand to

anyone who needs it.

---

[4] Dr. Haworth's psychological/psychosexual evaluation has been sent to the Court and the
government under separate cover.

On March 2, 2011, the United States Supreme Court held in <u>U.S. v. Pepper,</u> 09-6822, that a district court may consider post-sentencing rehabilitation at resentencing.  In an opinion written by Justice Sotomayor, the Court wrote " Highly relevant –if not essential – to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."

Although the Court did not address post arrest rehabilitation, it would appear that the basis of the opinion would apply to someone in Mr. Janvier's situation.

The Third Circuit has recognized that a defendant's post conviction rehabilitation efforts substantially in excess of that ordinarily present can warrant a downward departure.  See <u>United States v. Sally,</u> 116 F.3d 76, 81 (3d Cir. 1997).


### 3. Vulnerability to victimization or abuse in prison

Due to the nature of the offense, Mr. Janvier faces abuse in prison due to his offense. <u>See United States v. Parish</u>  308 F.3d 1025 (9th Cir. 2002 ) (eight level departure granted in child pornography case in part because defendant had high susceptibility to abuse in prison due to the nature of the offense).

### 4. Extreme remorse

As shown above and by Mr. Janvier's's statement  sent to the Court he has shown extreme remorse for his offense. <u>See United States v. Pauley,</u> 2007 WL 4555520 (4th Cir. Dec. 20, 2007) (36 month downward variance warranted in child pornography offense  where defendant was deeply remorseful).

**5. Disparity between federal and state sentences**

If the federal government had not adopted this case from the State of Delaware, Mr. Janvier would be facing a much lower sentence.

<u>See</u> <u>United States v. Wilkerson</u> , 411F.3d 1 (1st Cir. 2005) (where district judge "repeatedly expressed his concern about disparate treatment between federal and state court sentences in similar cases, but stated that the Guidelines did not permit him to take that disparity into account..," case remanded for resentencing in part because under <u>Booker</u>, "the need to avoid unwarranted sentencing disparities is among the factors to be considered).

**VI. <u>Conclusion</u>**

When defense counsel was first assigned to Mr. Janvier's case in 2022, for the first year, Mr. Janvier cried at every meeting. He is very insecure hand has low esteem. Defense counsel asked Mr. Janvier if he would like to be involved in a relationship when he is released and Mr. Janvier started crying and said :who would want me"

As noted above, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." <u>Rita</u>. at *9. It is respectfully submitted that the other §3553 sentencing factors, which take into account the circumstances of this offense diminish the suitability of the Guidelines in this case to adequately reflect the purposes and goals of sentencing.

Despite the instant offense, there is reason to be optimistic about Mr. Janvier's future. The more counsel got to know Mr Janvier, counsel felt he had a lot of things going for himself. He is extremely intelligent and can discuss almost any topic with a great deal of insight and

knowledge.  Somehow, he has to be shown how to develop these talents he possesses and not think so badly about himself.  He is a kind and caring individual who always wants to help others.  He has numerous relationships with that go back a long way.

Mr. Janvier can still pay his debt to society, learn to manage his anxiety and stress and use other outlets as he is learning in therapy. It is respectfully requested that this Honorable Court impose a sentence that would return Mr. Janvier to a life where he is not incarcerated for a lengthy period of time.

Counsel therefore, respectfully submits that the presence of these mitigating factors provide a basis for this Court to exercise its discretion and set a sentence that is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

For all of the above stated reasons, Mr. Janvier requests compassion and leniency in sentencing.

Respectfully submitted,

/s/ Peter A. Levin
_____
Peter A. Levin
Attorney for MELVIN JANVIER, III
1927 Hamilton Street
Philadelphia, PA 19130
(215) 563-3454

**CERTIFICATE OF SERVICE**

I, Peter A. Levin, Esquire, hereby certify that I have served a true and correct copy of the within Defendant's Sentencing Memorandum by first class mail to:

Samuel S. Frey, Esquire
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, Delaware 19899

Robert Cyywinski
U.S. Probation Officer
Wilmington, Delaware 19801

January 17, 2025

/s/ Peter A. Levin
_____
Peter A. Levin, Esquire